W. C. HALL ET AL. v. BLANCHE H. GWYNNE ET AL.

No. 213.

Notice—Community Property—Bona Fide Purchaser.—H. bought lands in 1860, which were community property of himself and his first wife, who died in that year, leaving children. H. married his second wife in 1861, and died in 1871, leaving her surviving. In 1864, he conveyed the land in question to S., who, in 1873. conveyed it to K., a purchaser for value, who knew the oldest son of H., and often visited the town where H. lived, but did not know that H. had been married twice, or that a former wife of his had died. *Held*, that K. was not chargeable with notice that there were children by the first wife entitled to claim the community interest of their mother in the land.

APPEAL from Mitchell.　Tried below before Hon. WM. KENNEDY.

*Smallwood & Smith*, for appellants.—1.　The court erred in failing to find as a conclusion of fact established by the evidence, that Howard Keys, defendant's vendor, was an innocent purchaser for value of the land in controversy, because it was shown by the evidence that said Keys purchased and paid full value for said land without any notice of plaintiffs' equitable interest in said land, and without knowledge of sufficient facts to put him upon inquiry in regard thereto.　Patty v. Middleton, 17 S. W. Rep., 909; Hensley v. Lewis, 17 S. W. Rep., 913; Pouncey v. May, 76 Texas, 565; Woodward v. Suggett, 59 Texas, 619; Edwards v. Brown, 68 Texas, 329; Manchaca v. Field, 62 Texas, 135; Wren v. Peel, 64 Texas, 374; Hill v. Moore, 62 Texas, 610; Clark v. Koehler, 32 Texas, 680.

2.　The court erred in not rendering judgment for defendants, because it was established by the evidence that defendants held title to said land by virtue of a valid transfer from Howard Keys, who was an innocent purchaser of said land for value.　Wallace & Co. v. Campbell, 54 Texas, 87; Grace v. Wade, 45 Texas, 522; 1 Story's Eq. Jur., sec. 409; Wade on Notice, sec. 62.

*R. H. Looney*, for appellees.—If Howard Keys, at the date of his purchase of the land, was in possession of such facts as would have prompted a prudent man, desirous to protect himself, and willing to act fairly with others, to have made inquiry which would have led to a knowledge of the equitable rights of the appellees, he can not be an innocent purchaser. Hill v. Moore, 62 Texas, 615; Edwards v. Brown, 68 Texas, 329; Hill v. Moore, 85 Texas, 335.

HEAD, ASSOCIATE JUSTICE.—Appellees instituted this suit to recover of appellants an undivided one-half interest, as heirs of their deceased mother, in the section of land in controversy.　The deed to the land was to M. J.

Hall, the father of appellees, and contained no recital as to whether or not he had a wife or children interested with him. It is not certain from the record whether the wife of M. J. Hall was living at the time this land was acquired or not, but the evidence is undisputed that it was paid for entirely with community property. This was in 1860.

In 1864 M. J. Hall conveyed this land to one Schwartz. In 1873 Schwartz, joined by his wife, conveyed by warranty deed to Howard Keys, who paid full value in cash; and appellants claim under him. At the time of the death of his wife, which occurred sometime in 1860, M. J. Hall owed no community debts, and the sale to Schwartz in 1864 was not to discharge any community obligation. The evidence is undisputed that appellees are the only heirs of Mrs. Hall.

The court found, that while Keys at the time of his purchase had no actual notice that Hall had a deceased wife whose heirs were interested in the land, he did have notice of such facts as were sufficient to put a reasonably prudent man on inquiry as to this, and he was therefore chargeable with notice, and gave judgment in favor of appellees for one-half the land, and ordered partition thereof.

The evidence upon this issue was confined to that of Keys himself, as follows: "I am 58 years old, and reside in Dallas, Texas, and my occupation is that of bookkeeper. On the 28th of August, 1873, I resided in Quitman, Wood County, Texas. At said time I was acquainted with E. Schwartz and wife. They then resided at Marshall, Texas. I am the grantee in the deed from Schwartz and wife to Howard Keys for eight sections of land, * * * said deed reciting a cash consideration of $2560 paid by said Keys. I paid said grantors the sum of $2560 for said eight sections. I paid it in cash. * * * Said amount was a fair consideration for said land at that time. I had no knowledge at the time I purchased said land from said Schwartz that M. J. Hall, under whom he claimed, had ever been married prior to the time that he, Hall, acquired said lands, or that his wife was dead. At the time that I purchased said lands from the said Schwartz, I knew young Mont Hall was reputed to be the son of M. J. Hall, but I knew nothing of any of the rest of the family. Did not know whether said Hall's first wife was dead or living, or whether he had a second wife. Said young Mont Hall was the only one of the family I knew. I did not know positively that he was a son of M. J. Hall; I was under that impression. At the time I purchased said land from Schwartz, I had no knowledge or notice that there were any children of the said M. J. Hall by any wife he may have married before he acquired said lands, who claimed or owned any interest in same."

Cross-examined: "About the year 1873, prior thereto, and afterwards, I was frequently in Marshall, Texas. I knew M. J. Hall, Sr., very well by reputation, and may have met him, but do not remember.

I knew young M. J. Hall. I first met him in Marshall, sometime prior to the time I purchased said land. I made the trade for the land in Marshall. I supposed M. J. Hall, Sr., was a married man, but knew nothing further of his family affairs. I did not make any inquiry into said Hall's family history. I paid for said land in cash money. I was very well acquainted in Marshall about that time. I have never seen the wife of M. J. Hall, Sr., to my knowledge."

In addition to this evidence, it appears from the statement of facts, that M. J. Hall was a man of considerable prominence and wealth, and had lived near Marshall since 1854. Also, that he married a second time, about one year after the death of his first wife, and was living with this second wife at the time of the sale to Schwartz, and that he died in 1871, prior to the purchase by Keys, leaving his said wife still living.

We think the court below erred in holding that Keys was under this evidence chargeable with notice of the interest of appellees in this land at the time he purchased it. The facts are strikingly similar to those held not sufficient for this purpose in case of Pouncey v. May, 76 Texas, 565. In the case of Hill v. Moore, 85 Texas, 335, so strenuously insisted on by appellees, the purchaser of the certificate was held chargeable with notice that it was community property, because it was one that could only have been issued to the head of a family. There was nothing to prevent a single man from acquiring this land as Hall did in this case. Or if it be held that Keys had notice that Hall was a married man, there is nothing indicating that he had notice that he was twice married, and that his first wife was the one interested in this land.

It should be remembered that Keys did not purchase from Hall, but from Hall's vendee, nine years after he had made the sale, during which appellees had asserted no claim in right of their mother.

We think the judgment of the court below should be reversed and here rendered for appellants for all the land in controversy.

*Reversed and rendered.*

Delivered September 27, 1893.