PECOS & N. T. RY. CO. et al. v. CHATTEN.*
(No. 954.)

(Court of Civil Appeals of Texas. Amarillo.
April 12, 1916. Rehearing Denied
May 10, 1916.)

1. TRIAL �köö194(19)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a servant's action for injuries, where the plaintiff testified that he was ordered by the conductor to uncouple cars, the language of an instruction that, if the plaintiff went between the cars to manipulate the couplers between said cars, under immediate control and eye of the conductor to uncouple two of the cars, etc., was proper, and was not upon the weight of the evidence or an enlargement of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 466; Dec. Dig. ⊙ö194(19).]

2. TRIAL ⊙ö252(11)—INSTRUCTIONS.

In a servant's action for injuries, the words "suddenly and unexpectedly" in an instruction, used with reference to the movement of the train at the time plaintiff was injured in going between two cars to uncouple them, must necessarily have been understood by the jury as relative, and in that sense is supported by the plaintiff's testimony that the movement was sudden and unexpected in one direction when he had given the signal to go in the other.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603; Dec. Dig. ⊙ö252(11).]

3. MASTER AND SERVANT ⊙ö296(12) — INJURIES TO SERVANT—INSTRUCTIONS.

Defendant's requested charge that if plaintiff in discharge of his duty could have uncoupled the cars by use of available means which did not require him to go between the cars and that in the exercise of ordinary care he should have used other available means for cutting the cars without going between them, verdict must be for the defendant was properly refused, since if the jury had found contributory negligence as suggested therein, it would have been a peremptory instruction against the negligence of the defendants as charged by the petition and raised by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1189; Dec. Dig. ⊙ö296(12).]

4. TRIAL ⊙ö203(1)—INSTRUCTIONS—PREJUDICIAL ERROR.

The refusal of a special charge applicable to the facts and not covered by the general charge is error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. ⊙ö203(1).]

5. APPEAL AND ERROR ⊙ö1068(5)—REVIEW—HARMLESS ERROR.

In a servant's action for injuries, where the jury were instructed in the general charge as to

concurring negligence and the proposition under the statute touching diminution of damages proportionate to contributory negligence, although the jury did not find on the question of contributory negligence, but the general verdict was not unreasonable for a permanent injury to plaintiff's foot, whether or not he was found guilty of contributory negligence, error in refusing an instruction that if they believed the plaintiff in the exercise of ordinary care could have uncoupled the car by the use of the lever on the other side, and if they further find that the plaintiff raised the pin too high and that in so doing failed to exercise ordinary care, they should find for the defendant, unless they should find that the defendant's employés failed to exercise ordinary care in obeying signals given by the plaintiff, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4230; Dec. Dig. ☞1068(5); Trial, Cent. Dig. §§ 475, 480, 525, 553, 558.]

6. MASTER AND SERVANT ☞296(12) — INJURIES TO SERVANT — ADMISSIBILITY OF EVIDENCE.

In a servant's action for injuries, evidence that the plaintiff had gone between two cars at other times to uncouple them, and that such acts were not unusual, was admissible to rebut defendant's reliance upon an application of employment in which it was agreed that the plaintiff was not required to use defective cars and machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1189; Dec. Dig. ☞296(12).]

7. EVIDENCE ☞20(2)—JUDICIAL NOTICE.

The court will not take judicial notice of a lease of the operating part of a railroad, although authorized by the Railroad Commission under the statute.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. ☞20(2).]

Appeal from District Court, Parmer County; D. B. Hill, Judge.

Action by R. E. Chatten against the Pecos & Northern Texas Railway Company and another. Judgment for the plaintiff, and defendants appeal. Affirmed.

Terry, Cavin & Mills, of Galveston, Madden, Trulove, Ryburn & Pipkin, of Amarillo, Carl Gilliland, of Hereford, and Sam G. Bratton, of Clovis, New Mexico, for appellants. L. C. Barrett and Jas. N. Browning, both of Amarillo, for appellee.

HENDRICKS, J. The plaintiff, and appellee, Chatten, alleged that while in the employ of defendant, repairing a road, it was his duty to uncouple certain cars, the coupling upon one of which was out of order and did not work automatically, requiring him to go between the cars and use his hands for that purpose; that while between the cars he signaled the engineer for the movement of the train in a certain direction, and said engineer suddenly moved said cars in an opposite direction from that indicated by his signal, and that on account of the sudden and unexpected movement of said train, his left foot was caught and run over and was mashed and crushed, inflicting permanent injuries; that defendant's agents, in moving the train in an opposite direction from that indicated by the signal, and permitting an automatic coupler to be in bad repair so as to require plaintiff to go between the cars to uncouple the same, constituted negligence. The automatic coupler alleged to have been out of order was operated by a lever in a position on the side and end of the car, precluding the necessity of coupling and uncoupling by the brakeman between the cars. The allegations of the plaintiff, as to the negligence of the employés of the defendant, with reference to the movement by the engineer of his engine in an opposite direction from the signal indicated, and the bad repair of the automatic coupler, were sustained by the testimony. The defendants specially answered by pleas of assumed risk and contributory negligence, and especially that plaintiff had been cautioned and warned not to go between the cars, and had violated the rules of the company in so doing, and had signed an application for employment, stating that he knew that he was not required to go into dangerous places and expose himself to hazardous positions.

The trial court, in the fourth paragraph of his charge, instructed the jury that if plaintiff went in between the cars—

"to manipulate the couplers between said cars, under the directions of the conductor, to uncouple two of the cars, and the coupler and attachments thereto were so out of order that the same would not uncouple without the necessity of the plaintiff going in between said cars and manipulating the coupler or its attachments with his hands, and that plaintiff signaled the servants operating the train to move it in one direction, and instead of so moving the train in the direction that plaintiff's signal indicated, the same should be moved, the servants operating the train moved it in the opposite direction, suddenly and unexpectedly to plaintiff, and the wheel of one of the cars caught the foot of the plaintiff and injured it, and that the allowing of the couplers to be out of order, if this was so, and the moving of the train in the opposite direction to that indicated by the signal of the plaintiff, if this was a fact, was negligence and the proximate cause of the injury, and (if) you fail to find that plaintiff assumed the risk you will find for plaintiff and assess his damages, unless you find for the defendant under some other charge herein given you."

[1] The fifth assignment of error complains that the language, "that he went between the cars to manipulate the couplers between said cars under immediate control of the eye of the conductor to couple the two cars," is upon the weight of the evidence and an enlargement upon the testimony. Plaintiff's own statement, we think, refutes this assertion.

"The plaintiff testified that the conductor said 'Get the pin,' and that the conductor was hardly 30 feet away at the time, and that the conductor said, 'Cut 'em in two, and pull the pin,' and he could not get it, and that the conductor said, 'Pull the other one.'"

[2] The sixth assignment complains that the words, "suddenly and unexpectedly," with reference to the movement of the train at the time plaintiff was hurt, was error because unsupported by the facts. The jury

necessarily understood that the language used was relative, and in that sense the testimony supports that the movement was a sudden and unexpected movement, if they believed the plaintiff.

The seventh assignment of error complains of the charge to the jury defining contributory negligence, in that it was not applied to the facts of the case as proven. Part of the assignment is based upon the action of the trial court in overruling the sixth paragraph of defendant's objections and exceptions to his charge. The statement under this assignment does not set forth the objection to the general charge. When we turn to the transcript the objections to the general charge are, in substance, that contributory negligence is not applied to the facts.

[3] In this same assignment (the seventh) the refusal of the following special charge by the trial court is also called in question:

"If you believe that the plaintiff, in the discharge of his duties, could have cut the cars by going over the cars and using the lever on the opposite side from where he was working, or by the use of other available means, if any, which did not require him to go between the cars, and you further find and believe that, in the exercise of ordinary care for his own safety, he should have gone over the cars and used the lever on the opposite side of the cars, or should have used other available means, if any, for cutting the cars, without going between the cars, or placing his body or limbs in a dangerous position, then you will return a verdict for the defendant."

Such a charge, if given by the court, would have been wholly erroneous. If they found contributory negligence as suggested therein, it would have been a peremptory instruction against the negligence of the defendants, as charged by the petition and raised by the evidence. Specially requested charge No. 7, also embodied in this assignment, as having been refused by the trial court, is merely a general declaration that plaintiff should exercise ordinary care in the discharge of his duties, and as to its peremptory feature is in the same condition as the previous special charge.

[4, 5] The eighth assignment of error embodies a complaint on account of the trial court's refusal of the following special charge:

"If you believe that by the exercise of ordinary care and diligence the plaintiff, in the discharge of his duties, could have uncoupled the car by the use of the lever on the side of the train where he was working, and you further find that plaintiff raised the pin too high, and that in so doing he failed to exercise ordinary care, then you will find in favor of the defendants, unless you should find that the defendants' employés failed to exercise ordinary care in receiving, transmitting, and acting upon signals given by the plaintiff."

Under this assignment is the following statement:

"Plaintiff testified that he raised the pin too high. The undisputed evidence by all the trainmen testifying was to the effect that Chatten (the plaintiff) could have used another lever on the side he was working, or could have gone across the car and have used the lever on the other side."

We fail to see what the lever on the other side and plaintiff's accessibility to it has to do with this particular charge. The statement that plaintiff testified that he raised the pin too high is rather speculative as to its meaning. Of course the rule is thoroughly settled that a special charge, applicable to the facts, if not covered by the general charge, if refused, constitutes error. This charge is a little hard to understand, unless it means that plaintiff, in the discharge of his duties, could have uncoupled the car by the use of the lever (which the charge does not state), and in so doing raised the pin too high, and thereby was guilty of negligence, to find for the defendants, unless the jury find that defendants' employés failed to exercise ordinary care in receiving, transmitting, and acting upon signals given by the plaintiff. In this case the jury returned a general verdict for $7,500. The trial court, in his general charge, presented concurring negligence and the proposition under the statute of the diminution of damages proportionate to contributory negligence; also submitted to the jury a special charge requested by the defendants, upon the same question. The Supreme Court of the United States said that:

"The statutory direction that the diminution shall be in proportion to the amount of negligence attributable to such employé means, and can only mean, that where the casual negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to both."

It is certain that the jury found defendant's negligence. That being true, if such a charge had been submitted, it could not have availed the defendant of any substantial benefit, except probably to call the jury's attention more directly to the question of the lever and plaintiff's operation of same on the side of the car where he was working. This court, in speaking of a similar charge, said:

"If the charge had told the jury to diminish the damages in proportion to appellee's negligence, then its refusal might have been harmful, and perhaps such a charge should have been given." Pecos & Northern Texas Ry. Co. v. Winkler, 179 S. W. 695.

In view of the fact that the defendant was found by the jury to have been negligent in that case, the refusal of the charge, as applied to the actual conditions, was held harmless. If plaintiff was negligent in the operaton of the lever on the side of the car where he was working, this record does not disclose whether the jury found contributory negligence, or excluded it, when they rendered merely a general verdict for $7,500. They could have found either way. In reading plaintiff's testimony as to his injuries, the amount of the verdict could not be considered excessive in view of numerous decisions of our higher courts. Regarding it as a per-

manent injury to his foot, the jury may have found contributory negligence, and deducted an amount on account of such a finding. We are unable to tell.

The ninth assignment of error is an argumentative presentation of the facts, from the defendant's standpoint that the verdict of the jury is contrary to the evidence. We overrule it.

[6] The second assignment of error is a complaint against the action of the court in permitting plaintiff to testify that he had gone between the cars before the time that he received his injury, while working on construction work of the defendant, and had done so in the presence of the conductor; also in permitting the witness Truskett to state that on different occasions he had seen trainmen go between the cars to couple and uncouple them, and that such acts were not unusual. The objections were that such testimony was immaterial and irrelevant, because the plaintiff knew that he was not required to use defective machinery and if he did so, it was at his own risk; it being understood and agreed when he entered the service of the company that he was not required to use defective cars or machinery. Defendant's reliance upon the application of employment could certainly be rebutted by the character of testimony indicated, and such objections could not be tenable. Whether such testimony would be sufficiently effective to prove a custom or acts to show an abandonment or disregard of rule would not militate against the materiality, as the trial court would not know how much of this character of testimony would be offered.

The plaintiff's original pleadings in this case sought to recover judgment against the Pecos & Northern Texas Construction Company and the Pecos & Northern Texas Railway Company. The plaintiff filed a trial amendment, stating that the Pecos & Northern Texas Railway Company, about the time of or after the injury set up in the original petition, changed its name to the Panhandle & Santa Fé Railway Company. Judgment was asked to be rendered against the Panhandle & Santa Fé Railway Company and said Construction Company in said amendment. The judgment reads that Chatten, plaintiff—

"do have and recover of and from the Pecos & Northern Texas Construction Company, and the Panhandle & Santa Fé Railway Company (née the Pecos & Northern Texas Railway Company) defendants, the sum of $7,500, together with all costs," etc.

[7] Appellants say that this court should reverse and dismiss as to the railway companies, and that we can take judicial cognizance of lines of railways as public highways and the names of the companies operating them; that in July, 1914, the Panhandle & Santa Fé Railway Company, under lease authorized by the Railway Commission, took over the operating part and began the operation of the trains over the lines of road owned by the Pecos & Northern Texas Railway Company, and have been operating said roads since said time. While the statute authorizes the Railway Commission to permit a lease under certain conditions, we are unable to take knowledge of such lease, if ever made. Appellee says that:

"The case was tried on the theory by the court below and both the parties that the Pecos & Northern Texas Railway Company had changed its name to that of the Panhandle & Santa Fé Railway Company, but was the same road and the same artificial person, with the same duties and burdens."

Appellee also quotes considerable testimony sustaining the contention as to the change of name, but says:

"The pleadings and the statement of facts do not show by what process nor in what manner the name of the Pecos & Northern Texas Railway Company was so changed."

We confess we are somewhat puzzled at this proceeding. How there could be a change of name we are not advised. Blackstone says:

"When the corporation is erected a name must be given to it; and by that name alone it must sue and be sued, and do all legal acts. * * * Such name is the very being of its constitution; and, though it is the will of the King that erects the corporation, yet the name is the knot of its combination, without which it could not perform its corporate functions." 1 Black. Com. 474. See Southern Pac. Co. v. Burns, 23 S. W. 289; Thompson on Corporations (2d Ed.) vol. 1, §§ 50–52.

Our reference to the fundamental error as assigned is simply to guard the judgment of this court to the extent that if the Panhandle & Santa Fé Railway Company is an independent corporation, leasing the properties of the Pecos & Northern Texas Railway Company, such judgment is not operative against it. The allegations in the trial amendment are merely to the effect that, as the Pecos & Northern Texas Railway Company had changed its name to the Panhandle & Santa Fé Railway Company, it is not sued as an independent corporation (if it exists as such), making it liable upon some theory under the law based upon an appropriate condition of facts, whereby it would be liable, but the suit is merely against it (whatever it is) as a change of name of the Pecos & Northern Texas Railway Company, and the judgment reading as stated.

Appellee insists that the judgment is correct, but if we think it incorrect, to reform it. We do not know whether it is correct or incorrect from this record. If the Pecos & Northern Texas Railway Company has in some manner changed its name to the Panhandle & Santa Fé Railway Company, or especially if it has gone out of existence as a corporation, in some manner, we would not think a judgment should be rendered against that company.

We think the other assignments are unnecessary to discuss, and the judgment as prayed for and as entered will be affirmed.