CHICAGO, R. I. & G. RY. CO. v. SMITH.
(No. 1211.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1917. Rehearing Denied Oct. 10, 1917.)

1. PLEADING ⊙⇒8(20) — CONCLUSION — CHARACTER OF INJURIES.

Allegations that by reason of his injury plaintiff's entire physical, nervous, and mental being suffered a severe shock do not present the pleader's general conclusion.

2. EVIDENCE ⊙⇒359(4) — X-RAY PICTURES — ADMISSIBILITY—PRELIMINARY PROOF.

Evidence in servant's action for injuries held to warrant admission of book plates showing X-ray pictures of the normal human foot for comparison with plaintiff's foot after the injuries.

3. EVIDENCE ⊙⇒471(12)—OPINION—INJURIES TO SERVANT—MENTAL SUFFERING.

In a servant's action for injuries, plaintiff could testify that he got awfully blue at times because he could not do the work which he had formerly done.

4. DAMAGES ⧉53—INJURIES TO SERVANT—MEASURE OF DAMAGES—MENTAL DISTRESS.

That the servant, after his injuries, showed a mental condition which he described as "the blues," was an element of damages allowable.

5. DAMAGES ⧉53—MEASURE OF DAMAGES—MENTAL DISTRESS.

Mental suffering, which an injured person experiences from brooding over and regarding his crippled condition, is not too remote, but is a proper subject for damages in servant's action for injuries.

6. TRIAL ⧉191(1)—INSTRUCTION—ASSUMING FACTS IN ISSUE.

A requested instruction, assuming the facts in issue, is properly refused.

7. APPEAL AND ERROR ⧉1062(2)—HARMLESS ERROR—ISSUES SUBMITTED.

Error, if any, in refusing to submit the issue of the servant's assumption of risk, was harmless, where, in view of the finding of the master's negligence no other verdict than that arrived at could have been reached.

8. MASTER AND SERVANT ⧉206—INJURIES TO SERVANT—"ORDINARILY INCIDENT."

Dangers "ordinarily incident" to employment are those commonly and usually pertaining to and incident to it, which a reasonably prudent person might anticipate, and do not include danger by acts of negligence, unless habitual and known to the servant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinarily.]

9. MASTER AND SERVANT ⧉297(2)—INJURIES TO SERVANT—CONFLICTING FINDINGS—EFFECT.

Where the jury found that the servant did not try to step on the stringer, lose his balance, and fall on the ground, their finding that such act was negligence, and the proximate cause of the injuries, though inconsistent, was unnecessary, and could be disregarded.

10. DAMAGES ⧉134(3)—EXCESSIVE DAMAGES.

A verdict of $10,000 to a servant 25 years of age, earning $80 per month, who after his injury could earn no more than $9 per week, and bones of whose feet were smashed, was not excessive.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by A. W. Smith against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Lassiter & Harrison and R. M. Rowland, all of Ft. Worth, and C. E. Gustavus, of Amarillo, for appellant. Crudgington & Works, L. C. Barrett, and J. N. Browning, all of Amarillo, for appellee.

HALL, J. Appellee sued appellant railway company to recover damages on account of alleged personal injuries, resulting from a fall from a bridge upon which he was working as an employé of appellant. A trial before a jury resulted in a judgment for $10,-000 in favor of appellee, based upon a verdict answering certain special issues, which will not be set out here.

[1] By its first assignment of error appellant complains of the court's action in overruling one of its special exceptions to the plaintiff's amended original petition. The exception is as follows:

"The allegations in the sixteenth paragraph are wholly insufficient, in this: The charges that plaintiff's entire physical, nervous, and mental being was severely shocked and stunned are mere general conclusions, without the statement of facts, and do not show the kind, character, and extent of any such injuries."

The fifteenth paragraph of the amended original petition alleges specifically and in detail the injuries to appellee's feet, ankles, and legs, showing the results of the injuries, "whereby he was caused to and did suffer intense and excruciating pain of both body and mind, which suffering has continued with greater or less intensity to the present time, and will continue indefinitely in the future."

The sixteenth paragraph is as follows:

"In addition to the injuries above shown, there was also caused to plaintiff's entire physical, nervous, and mental being a severe shock and stunning, from which he lost consciousness for some time, and afterwards suffered great pain and anguish in body, nerves, and mind."

We do not assent to appellant's contention that this allegation is a statement of a mere general conclusion. We think it is the statement of a condition—the result of the injuries specifically set out in the preceding paragraph—and is the statement of a fact. The kind, character, and extent of the injuries is further declared in the statement that his entire physical, nervous, and mental being was severely shocked and stunned, from which he lost consciousness for some time, and afterwards suffered great pain and anguish in body, nerves, and mind. As said by the Supreme Court in Railway Co. v. Shafer, 54 Tex. 646:

"It is neither necessary nor proper to set forth the evidence on which the pleader relies to sustain the facts which constitute his cause of action."

The allegation is sufficiently specific and definite to notify appellant of the character of evidence which will be offered to sustain the facts alleged. The permanent inability of appellee to get about to work and earn money was amply declared by other allegations, and appellant is bound to take notice of the necessary and inevitable effects and results of conditions brought about by the negligence of its servants and employés. Railway Co. v. Curry, 64 Tex. 85; Railway Co. v. Callihan, 86 S. W. 929; Railway Co. v. Gready, 36 Tex. Civ. App. 536, 82 S. W. 1061.

[2] Under the second assignment appellant complains of the court's action in permitting appellee to introduce, in connection with the evidence of Dr. J. R. Wrather, certain X-ray pictures of the bones of the normal foot found in a medical work known as "Treatment of Fractures," by Scudder. As shown by the bill of exceptions, there was considerable discussion between the court and counsel for the parties, and the witness was examined and cross-examined to a great extent; but the objections finally lodged are that the photographs are immaterial and irrelevant, are not sufficiently identified, are

introduced only' for the purpose of comparison, and no sufficient predicate laid for their introduction for any such method of comparison, it not being shown what the condition of plaintiff's arch was—whether it was normal or otherwise—prior to the injury. Upon cross-examination of Dr. Wrather by appellant, the witness stated that the plates or photographs introduced were to his knowledge correct pictures of normal arches of the feet. He further testified that the book containing the plates was a standard work, accepted by the medical profession generally. It further appears from the record that the condition of appellee's feet, both before and after the injury, was shown by the evidence. In this state of the record, the plates were certainly not immaterial or irrelevant. Their correctness was established by the evidence of Dr. Wrather, and, while the predicate was not laid prior to their introduction, this objection was removed by proper subsequent proof. In H. & T. C. Ry. Co. v. Shapard, 118 S. W. 601, Reese, Justice, said:

"It would be strange if, in the trial of cases in courts, use could not be made of facts elicited by means of a process, the usefulness and accuracy of which has been so completely demonstrated as have been photographic views of the bones of the living body by means of the X-ray. When properly taken, as these views were shown to have been, it is a matter of such common knowledge that they accurately represent what they purport to show that even courts may take cognizance of the fact."

[3] It is urged under the third assignment that the court erred in permitting the plaintiff to testify in his own behalf, over defendant's objections, as to the effect of his injured condition upon his nerves and mind. The question and answer objected to are as follows:

"Q. Has there been any effect, from your condition as you understand it, upon your nerves or mind, thinking about your condition? A. As to whether or not the condition of my feet, as I have explained it, has any effect on the condition of my nervous system and mind, I will state it does affect my mind. The way it affects my mind is that I get awfully blue at times, when I see that I cannot do as I used to do, and get about as I would like to, and hold the positions that I would want to. As to whether or not I have noticed any effect of those things on my nervous condition, I might state that I have been nervous since I have been hurt, but don't know whether that is affected or not. I would not say."

The objections urged to this question and answer are that the witness was not shown to be competent, that the question involved speculation, and there were no pleadings to justify any proof of that character. The answer made by the witness to the question eliminates the objection in so far as it attempted to elicit evidence as to the effect which his thinking about his condition had upon appellee's nerves, and he may not, under the authorities, have been competent to testify upon that point; but it was certainly competent testimony when he stated that thinking about his condition caused him to feel blue. He, above all others, was best qualified to state this fact. A., T. & S. F. Ry. Co. v. Click, 32 S. W. 226. There was no element of speculation involved in his answer. We think the pleadings were sufficient to admit the proof. He alleged intense suffering and pain of both body and mind, and that such pain and suffering would continue to the end of his life; that it was a shock to his physical, nervous, and mental being, resulting in a loss of consciousness, which he suffered in body, nerves, and mind; and that said injuries were permanent. He further alleges that it almost destroyed his earning capacity; that up' to the time of the injury he was a stout, robust, healthy young man, capable of performing any kind of manual labor and severe toil; and that this condition had been practically destroyed by the injury. Under this assignment appellant insists that, even if plaintiff is correct in his statement that his attacks of "blues" and his occasional morbid mental conditions are due to the injury to his feet, still such effects of an injury cannot form the basis of a recovery, or enter into the estimate of the damages according to the rule which prevails in the United States courts and which necessarily controls this case.

[4, 5] By argument and citation of authorities under this proposition, appellant endeavors to bring the case, in so far as the matter of mental anguish is concerned, under the rule obtaining in the federal courts on this subject, under the federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]). Some of the lower federal courts have held that mortification or distress of mind from the contemplation of one's crippled condition, and its effect upon the esteem of his fellows, which is held to be mental pain, separable from the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of damages in such case. The answer of the appellee clearly does not bring this case within that rule. He made no reference whatever to the esteem his fellows would place upon him, nor to the mortification attending the realization of the fact that he was maimed, crippled, and disfigured, but stated that his mental condition, which he describes as "the blues," was the result of the thought that he could not, since the accident, "get about" and do as he would like to, and hold the positions which he would want to hold. As an element of damages this comes within the rule announced in the case of M., K. & T. Ry. Co. v. Miller, 25 Tex. Civ. App. 460, 61 S. W. 978 (writ of error denied by Supreme Court), where we find this language:

"The second assignment complains of the court permitting the plaintiff to testify on the issue of mental anguish as follows: 'There are times when I am thinking of what I am now and what I have been. The prospects are so heavy for

me that I can hardly bear the weight. I have been a very active man in my day, and when I think of what I have been, a powerful man, and when I think that I have got to be laid up the balance of my life, the load is a little heavy for me.' * * * The objection to this evidence, as stated in appellant's brief, was as follows: 'Defendant objected to the question, and to any evidence of mental suffering from contemplating his crippled condition, and requested the court to restrict the testimony to mental anguish growing out of physical injury to plaintiff, and not contemplating his crippled condition, because such evidence would be immaterial, irrelevant, and too remote.' This assignment complained of the court's refusal to give a special charge in this language: 'If you find in favor of the plaintiff, you will not allow him any amount as compensation for any mental anguish or suffering you may believe he has suffered from brooding over or contemplating his maimed or injured condition, and regretting the difference, if any, between his present * * * condition and what it was before he was injured.' Only one proposition is submitted under these two assignments, and that is: 'Mental suffering, which an injured person experiences from brooding over and regretting his crippled condition, is too remote, and not a proper subject for damages in cases of this kind.' We think the court did not err in admitting the evidence, nor in refusing to give the special charge asked, since mental anguish or suffering is a proper subject for damages in cases where one in good health and strength, sound in mind and members, by reason of the wrongful act of another is reduced to the state of a physical wreck, maimed and crippled for life, broken in body and spirit; and since the jury may presume mental anguish in the absence of affirmative evidence thereof, in cases where such would be the natural consequence of such injury, we can see no good reason, since parties to the suit may testify, why they may not relate their mental anguish as well as their physical suffering. We understand that this mental suffering may be, in part at least, the result of comparing their present wretched, dependent condition and hopeless future with the bright, happy, and independent life of which they were deprived by the injury, as well as the contemplation of the fact that they must suffer from the effects of such injuries during the balance of their lives. * * * We are unable to see why the mental sufferings of this man, in contemplating his changed condition from a bright, happy life to a living death, should not form one of the natural results of such an injury and a proper subject of evidence and of damages."

In the case of T. & P. Ry. Co. v. Curry, 64 Tex. 88, the Supreme Court said:

"The law infers, when such injuries to the person are shown to have existed as are alleged and proved in this case, that physical pain resulted therefrom; for by common observation we know that, in the ordinary operation of natural laws, pain is a necessary result of such injuries, unless the condition of the injured person be abnormal, which will not be presumed. This is equally true as to mental suffering; for it is contrary to common experience and the laws of man's existence and nature that any sane, healthy, and robust person by physical injuries may be made a cripple for life in a matter affecting his health, comfort, or capacity, without mental pain resulting from the changed condition. No proof is required to be made of those things which every person is presumed to know, and, as it is not required that proof be made of a fact necessarily resulting from facts proved, then it is not necessary to allege the resulting fact, for it is understood to be averred by the averment of the facts from which it necessarily results."

We think appellee's evidence brings the case within the rule announced in McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162, in which objection was made upon appeal to a charge set out in the opinion. The court said:

"The jury are to consider mental suffering, past and future, found to be the necessary consequence of the loss of his leg. Where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it. It is not unlikely that the court might have given more ample instructions in this respect, had it been requested so to do; but what was said limited the compensation to the direct consequences of the physical injury. * * * That there might be more or less continuous mental suffering directly * * * from a maiming of the plaintiff's person in an injury of this character was probable, and where the jury was limited to that which resulted from the injury we think there can be no valid objection to or just ground of complaint." Railway Co. v. Barron, 5 Wall. 90, 18 L. Ed. 591; 5 Sutherland on Damages (4th Ed.) § 1331.

The fourth assignment insists that the court erred in permitting Dr. R. D. Gist to testify in behalf of the plaintiff as to the percentage of impaired earning capacity of plaintiff by reason of his injured condition, and the objection is urged that the witness should not have been permitted to give his opinion, when his own testimony shows that he was not making a real estimate, but was merely guessing. The record does not sustain the statement that the witness' own testimony shows that he was not making a real estimate, and was only guessing.

Under the fifth assignment appellant contends that the court erred in not confining the jury, by special issue No. 8, to the negligence pleaded and proven, and that said special issue, when considered with the instruction given in connection therewith, is confusing and misleading. The eighth special issue, in referring to negligence, uses this language:

"And you so find under the issues hereinbefore submitted for your determination."

Special issue No. 4, in dealing with the matter of negligence, uses this language:

"The way and manner and under the circumstances alleged in plaintiff's petition."

In special issues 5 and 6, the court submitted the question of appellee's negligence as alleged in appellant's answer, to both of which the jury answered "No." When the charge accompanying special issue No. 8 is considered in connection with the other special issues submitted, we think no error has been committed, and that the jury, in their deliberations, were necessarily confined to the negligence pleaded and proven.

[6] The court properly refused special charge No. 5, requested by appellant, as it assumes that the stringer, at the time appellee stepped upon it, had been fully landed upon the caps. Appellee's pleading and proof show that this is not a fact, and the jury so found.

[7] Under the seventh assignment it is contended that the court erred in not submitting special issue No. 2, requested by appellant, presenting the defense of assumed risk. If we admit that each of the questions presented could have been answered most favorably for appellant, the court could not, in the face of other findings by the jury, have rendered a different judgment. There seems to have been little or no controversy upon the facts sought to be found. The work in which appellee was engaged was hazardous. His own evidence shows that he was a bridge builder of considerable experience, and that the particular work in which he was engaged at the time of the injury was done in the ordinary manner and with the ordinary appliances. A finding of all of these facts could not have resulted in a different judgment, since the jury found that the negligence alleged was fully proven.

The failure of the court to submit special charge No. 3, for appellant, is the basis of the eighth assignment. The substance of this charge was submitted to the jury in special issues Nos. 5 and 6 of the court's general charge. Special issue No. 3 is objectionable, because it assumes that the stringer was landed when appellee endeavored to step on it.

[8] The ninth assignment is that the court erred in overruling, and not sustaining, defendant's objections and exceptions to the supplemental instructions of the court to the jury, in answer to their question while deliberating upon their verdict, requesting the court to define the expression "ordinarily incident." The objections were: (1) That the words should be construed in their usual and ordinary significance, and the court should not attempt to define them; (2) the definition by the court should be only that said words are to be understood as commonly and usually occurring and reasonably to be anticipated by one in the character and kind of employment; (3) that the instruction given by the court is not applicable, and not responsive to the question, and is misleading; and (4) the latter paragraph, in reference to "habitual," is erroneous, because whether an act of negligence is habitual or not, if the plaintiff knows, or in the course of employment should necessarily know, of the negligence, it may be ordinarily incident to the employment under the circumstances. The definition given by the court is as follows:

"By the expression 'ordinarily incident' to plaintiff's employment is meant danger, if any, commonly and usually pertaining to and incident to the kind and character of plaintiff's employment, and which a reasonably prudent person might anticipate might occur in such employment. Danger caused by an act of negligence, if any, on the part of the defendant or its employés, would not be danger ordinarily incident to plaintiff's employment, unless such act of negligence, if any, had theretofore been habitual, and the plaintiff knew of it, or must necessarily have learned of it in the ordinary

discharge of his own duty before he was injured, and should have anticipated its probable occurrence at the time he was injured, in which case danger caused by such negligence, if any, would be ordinarily incident to plaintiff's employment."

We think the meaning of the term "ordinarily incident," as defined by the court, is substantially correct. Freeman v. Fuller, 60 Tex. Civ. App. 242, 127 S. W. 1196. Paragraphs (e) and (f) of the general charge are as follows:

"(e) If there was danger to plaintiff's safety in connection with the movement of the east end of the stringer by defendant's foreman, did plaintiff, before the injury, and in time to avoid the same, know and appreciate the danger, if any there was, in connection therewith?

"(f) If there was any danger to plaintiff's safety in connection with the movement of the stringer by defendant's foreman, must plaintiff, in the ordinary discharge of his own duty, have necessarily learned and appreciated the danger, if any there was, in connection therewith, before and in time to have avoided injury?"

The definition as given by the court, when considered by the jury in connection with the two issues copied above, leaves no ground for supposing that the jury could have been misinformed. Appellee insists that the charge in this particular is more favorable to him than otherwise. In this contention we believe he is correct, since the evidence did not show that the risk was one ordinarily incident to the employment, but that he was required by the foreman to step on the west end of the stringer, which it was alleged was suddenly and unexpectedly moved by the foreman, and which caused him to lose his balance and fall to the ground.

What is here said also disposes of the tenth assignment.

The eleventh, twelfth, thirteenth, and fourteenth assignments attack the verdict and finding of the jury as contrary to, and not supported by, the evidence. These assignments are overruled.

[9] By the fifteenth assignment it is insisted that the verdict and findings are inconsistent and contradictory, and are unsupported by the evidence. By special issue No. 5 the jury was asked:

"Did the plaintiff, at the time, place, in the manner, and under the circumstances alleged in paragraph 6 of defendant's answer, attempt to step upon the stringer, lose his balance, and fall to the ground?"

This was answered in the negative. By special issue No. 6 the jury was asked:

"If the plaintiff, at the time, place, in the manner, and under the circumstances alleged in paragraph 6 of defendant's answer, did attempt to step upon the stringer, lose his balance, and fall to the ground: (a) Was the same negligence of plaintiff? (b) Was the same the proximate cause of the injuries to plaintiff or any of them, alleged in plaintiff's petition?"

Both of these questions were answered affirmatively; after having answered special issue No. 5 in the negative, it was unnecessary for the jury to answer special issue No. 6, and the affirmative answer returned to this issue cannot be construed as a find-

ing that the plaintiff was guilty of negligence, and that his negligence was the proximate cause of his injury, since the answer to special issue No. 5 precludes any such assumption; nor is there any conflict shown by the answer of the jury to special issue No. 7.

[10] The sixteenth assignment of error assails the verdict as being excessive. Appellee was about 25 years of age at the time of the injury. His life expectancy was nearly 39 years. He was earning at the time of his injury $80 per month. Since the injury he has not been able to earn more than $9 per week. The difference between these sums during his life expectancy would be something over $12,000. This, when considered in connection with the pain and suffering and the condition of the bones in his feet, we think, is sufficient to sustain the verdict. Railway Co. v. Chatten, 185 S. W. 911; P. & N. T. Ry. Co. v. Trower, 61 Tex. Civ. App. 53, 130 S. W. 588; Railway Co. v. Martin, 161 S. W. 405.

The record presents no reversible error, and the judgment is affirmed.