## Cunningham *et al. versus* Smith's Adm'r.

1. When a fact essential to the plaintiff's case is admitted by the pleading, it is not proper to admit evidence to prove it, if the evidence contains other matter irrevelant which may be calculated to distract and mislead the jury.

2. Letters of administration are primâ facie evidence of the death of the person on whose estate they are granted, and where there is no issue made upon them, are conclusive evidence of the fact of death.

3. One has a right to have his life insured with the money of another and assign the policy to him absolutely.

4. A policy of insurance was issued to S. on his life, the premiums being paid by C., to whom S. immediately made an absolute assignment of the policy. The evidence in the case insufficient to submit to the jury that the assignment was as collateral.

5. A case cannot be submitted to the jury on a *scintilla* of evidence.

6. Howard Express Co. *v.* Wile, 14 P. F. Smith 201, adopted.

January 31st and February 1st 1872. Before Thompson, C. J., Agnew and Sharswood, JJ. Williams, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 231, to January Term 1871.

This was an action of assumpsit brought March 31st 1869, by Anne Smith, administratrix, &c., of Jerome Smith, deceased, against Winthrop Cunningham, William T. Cunningham and Graham P. Cunningham, trading as W. Cunningham & Sons.

Jerome Smith having been in his lifetime connected in business with the defendants, effected an insurance on his life with the Connecticut Life Insurance Company for $5000 and assigned the policy No. 88,435 to the defendants; after his death they collected the amount of the insurance. The suit was brought by the plaintiff to recover what had been received by the defendants on the policy.

The question was whether the assignment of the policy to the defendants was absolute or as collateral security.

The case was tried before Thayer, J., October 31st 1870.

The plaintiff gave in evidence, her letters of administration on

the estate of Jerome Smith, deceased, granted March 15th 1869, also articles of agreement dated September 1st 1868 between the plaintiff of the first part and W. A. McCann and Jerome Smith, trading as W. A. McCann & Co., of the second part, reciting that the parties of the second part were about to establish themselves in business in Vera Cruz, &c., and agreeing that the two parties should purchase and consign goods to each other from the United States, and Mexico and Central America respectively, and divide the profits;—the party of the first part to furnish the other party with cash and letters of credit, &c. Also policy of insurance No. 88,435, dated September 19th 1868, issued by the Connecticut Life Insurance Company to Jerome Smith for insurance on his life for $5000, endorsed thereon, assignment by Jerome Smith as follows:—

"Philadelphia, September 19th 1868.

For value received, the receipt of which is acknowledged, I hereby assign, transfer and set over absolutely unto W. Cunningham & Sons and assigns, policy No. 88,435, to which this is annexed, issued on my life by the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, and any money which may at any time hereafter come to be payable by reason thereof, and all and singular the remedies in law, equity or otherwise for the recovery thereof."

Also endorsed, receipt March 13th 1869 by defendants for $5000, less $1.42 premium.

Also, policy of insurance from same company, dated September 12th 1868, countersigned by W. H. Tilden, agent, September 19th 1868, on life of Jerome Smith for $5000, payable to Mrs. Annie Smith with receipt, Annie W. Smith, dated March 13th 1869, endorsed thereon for $5000, less $1.50 premium due.

Also receipt of J. B. Gest, defendants' attorney, viz.:

"Received March 5th 1869, of Mrs. Jerome Smith, her draft upon the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, per Walter H. Tilden, Esq., its agent in Philadelphia, of this date, to our order for $523.75, payable upon settlement of the policy of insurance on the life of her late husband, standing in her name, such amount when paid to be in full receipt and acquittance of premium paid by us September 17th 1868, on said policy, viz.: $113.75, and also $410 advanced by us to her, as follows," &c. (stating specific payments).

Mrs. Smith, the plaintiff, who was the widow of the decedent, testified that her husband sailed from Philadelphia for Havana, September 17th 1868; on the 10th of October, W. T. Cunningham called on her, and asked her for the policy which the decedent had taken out; he said he had received a letter from Gonzales Poey at Havana, informing him of the decedent's death, on the 2d, of yellow fever; she said that at an interview shortly afterwards

[Cunningham *v.* Smith's Administrator.]

"he told me that the policy they had taken out to secure them against losses was lost, but that mine were all right. * * * He said they had lost their policy, and they did not know what they could do. They had failed, he said, to pay the premium when they were called upon, or something to that effect. He said he intended to publish the company in every state in the Union, because they had failed to pay the money."

H. W. Smith, a son of the plaintiff and stepson of decedent, testified as to his mother's first interview with Cunningham substantially as she did; he also testified: * * * "She wanted to go on; he told her she could not go; that she had plenty of money to live on, and they would not see her want for anything; he left some money for mother at that time; he laid it on the table; I don't know how much; on the following Sunday I saw him there again; he then told mother that the policy they had taken out was lost on account of non-payment of the premium, but that mother's policies were all right; they had neglected to send the check for the premium around; he said that they had lost the policy that they expected would cover all the expenses, because they had neglected to send a check to Mr. Tilden; mother said she would have the body brought on at any expense; I went into the employ of the defendants November 9th; while in their employ I asked several times for the policies, at my mother's instance; I never got them, and they always gave excuses—said that Mr. Gest had them, and they forgot to get them; * * * Cunningham said mother's policies were all right, but the one taken out to secure them was lost."

The plaintiff offered in evidence the deposition of Gonzales Poey, also a letter from witness to defendants, dated October 2d, and letter from defendants to witness, dated October 5th 1868, both referred to in deposition.

The defendants objected to the offers; they were admitted and several bills of exception sealed.

The witness Poey, proved the death of Smith at Havana of yellow fever on the 2d of October, and that he telegraphed to the defendants on the 3d of October, in the morning; he wrote to defendants by steamer on the 3d; he also informed Mr. Neilson, of Havana, of Smith's death, and saw his effects sealed up by the American consul at Havana; the body was embalmed by the consul and witness, under directions, by telegraph, from the defendants.

The letter from witness to defendants informed them of Smith's death; that his effects were in the hands of the American consul; that he had $760.55 in money; that the consul would pay all expenses, &c. The letter from defendant to witness acknowledged the receipt of the telegram from witness, stating it was paid; saying they had sent a telegram directing the embalming of the body; that the money was defendants'; directed witness to save expenses.

[Cunningham v. Smith's Administrator.]

In the letter the defendants said they could not get permission from the health officer to land the body, and had ordered Mr. Neilson to bury the body without embalming; that in consequence of the destitute condition of the family of the deceased, they "were anxious to cover all possible expenses, and thereby assist them as much as we can; we want all expenses saved that can be on account of the wife and family."

The plaintiff gave in evidence an account presented by the defendants to her for advances to the decedent, premium on life-policy, postage, half expenses of returning body, &c., amounting in all to $1431.39.

Winthrop R. Cunningham testified that he was present at several interviews between Smith and the defendants at their office, shortly before Smith started for Vera Cruz. "William T. Cunningham suggested to him, and to the firm, that his life should be insured. This was agreed upon, and Smith expressed himself willing it should be done to any amount for the benefit of W. Cunningham & Sons. I am now speaking of several conversations. I do know that in the course of one conversation W. T. Cunningham said distinctly to Jerome Smith that he wanted it clearly understood that on any insurance that he effected for the firm, that if he died, we made the insurance, if he didn't we lost the premium. I remember those words; Jerome Smith fully assented to this. And William T. Cunningham further suggested that he should insure his life for the benefit of his wife and family; Jerome Smith replied that he had no money. William T. Cunningham (that is the firm) offered to furnish the money, and did so. Jerome Smith left to go to the office of Walter H. Tilden, the agent of the Connecticut Mutual Life Insurance Company, to make application and be examined. I know the policies were issued, and I saw the assignment. I saw the policies and both the assignments—one was to W. Cunningham & Sons, and the other assignment was to Mrs. Annie Smith, wife of Jerome Smith. I know that W. Cunningham & Sons paid the premiums on both policies. When the subject of insurance was introduced Jerome Smith mentioned the Continental Insurance Company, but that company was strange to W. Cunningham & Sons, who had their insurances largely in the Connecticut Mutual, and they recommended that company. The firm agreed to place $5000 on his life for the benefit of his wife. The amount of W. Cunningham & Sons' policy was left entirely to them, Jerome Smith signing the assignment to them in blank as to the amount of the policy; they were to decide as to the amount at their convenience; the question was whether it was to be five, or ten, or fifteen thousand dollars. * * * It was intended to guard against any possible loss in case of his death, although it was clearly looked upon and intended as an investment. * * *

"It was clearly understood and agreed upon between Mr. Smith and W. Cunningham & Sons that it was to be solely for the benefit of W. Cunningham & Sons, free from any claim of any kind. Mr. Smith was asked if he was willing that his life should be so insured, and he expressed himself as being perfectly willing without reserve. I know from what I heard, that irrespective of this policy Mr. Smith was to refund to W. Cunningham & Sons any private advances, and the money furnished him was to be invested in merchandise for benefit of McCann & Smith and W. Cunningham & Sons."

G. P. Morgan, a book-keeper of defendants', testified " that a few days before Smith sailed, Smith in answer to the inquiry by W. Cunningham, whether he had made provision for his family, said he had, in the Continental Insurance Company; William Cunningham asked him if that was all he would like to have; he said he would like to have more but couldn't afford it; William Cunningham said if he wanted more the firm would advance money to pay the premium; he seemed thankful; an application was made to the Connecticut Company and a policy was taken out for his wife; there was then a further conversation about a policy to be taken out for the benefit of the firm, and as to whether there would be any difficulty in their taking out a policy which would secure them the amount of it in case of his death, whether they had any interest or not; Mr. Smith said they could take out a policy for whatever amount they liked, if they would pay the premium; he then went to the Connecticut Mutual Insurance Company's office and signed an application in blank, and also an assignment; he told me he had done so; Mr. W. Cunningham said it was understood that they were to recover the money whether Smith was indebted to them or not, that it was an investment on their part; * * * it was understood that this policy had nothing to do with their advances to Mr. Smith, or to the business in Mexico; I heard Mr. Cunningham say this to Mr. Smith. The policy had nothing to do with the advances to Jerome Smith, or the risks of the business in Mexico; it was as I said an investment on Mr. Smith's life; there was no business risks spoken of; it was outside of all these matters; these checks were filled up by me, and were given for premiums on the two policies in the Connecticut Mutual."

Walter H. Tilden testified: " As agent for the Connecticut Mutual Life Insurance Company I issued these policies. * * * I witnessed the assignment of this policy to defendants. Jerome Smith said it was to be an absolute and unconditional assignment, and it was so drawn by me; it was not recorded; the assignment specifies no amount. The policy was made out on its date, September 19th 1868. Our policies are not valid until countersigned by me as the local agent. I countersign them when delivered.

[Cunningham *v.* Smith's Administrator.]

These policies were countersigned the same day. The last policy was received about a week afterwards. They were dated even, so as to secure the assignment. The assignment was in blank, only to be issued in case the policy was issued. It was signed September 15th 1868, at the time he made the application."

There was some contrariety of evidence whether the premiums had been paid by defendants to the insurance company before or after the death of Smith.

The plaintiff's 5th point which was affirmed was:

"If the jury find from the evidence that the policy in question was assigned to defendants to secure them from loss for moneys by them advanced or to be advanced to Jerome Smith or McCann & Co., or from loss on business done with said firm, then the plaintiff is entitled to recover from defendants the amount received from the insurance company less such moneys so advanced and such losses; and that the defendants must show the amounts of such advances or losses."

The defendants submitted these points:—

1. The assignment of the policy by Jerome Smith in his lifetime to the defendants, vested in the defendants a right to the money to be paid at his death by reason of the policy, and the verdict should be for the defendants.

2. If the jury believe from the evidence that the assignment of the policy of insurance by Jerome Smith to the defendants was not made in fraud of creditors, the verdict should be for the defendants.

3. If the jury believe from the evidence that the defendants with their own moneys paid the premium for the policy, then they are entitled to the benefit of the same, and the verdict should be for the defendants.

6. A merely voluntary assignment by a party, of a policy of insurance on his own life, is good against his executors or administrators, and if the jury find from the evidence that Jerome Smith did assign the policy in question, the verdict must be for the defendants.

9. Whether the payment of the premium by defendants to the insurance company was after or before the death of Jerome Smith, is not material, except as between the company and the defendants; and if the company, notwithstanding, paid the amount insured to the defendants, the fact, if it be so, that the premium was not previously paid, cannot enure to the benefit of the plaintiff.

10. On all the evidence in the case, the verdict of the jury should be for the defendants.

In answer to the points the court said:—

"As to the 9th point, I decline to say that it is a totally immaterial circumstance in the consideration of the case, though it does not appear to me to be very material, but I leave it with all the

[Cunningham *v.* Smith's Administrator.]

facts to you. I will say, however, that in point of law it is not material whether the premium was paid before or after the death.

"The other points of the defendants I decline to instruct you as requested."

The court also charged :—

"If the jury should find that the assignment of September 19th 1868, although on its face an absolute assignment, was in truth and in fact, and by the agreement and understanding of the parties intended to be only an assignment intended to secure the defendants their advance and expenses, or to secure other claims which they might have against William A. McCann & Co.; in other words, that they were only to acquire a limited interest in the policy instead of the absolute ownership, then the defendants, out of the amount which they collected from the company on the policy, can retain only such sum as represents, and is equal to their advances or expenses or other just claims against William A. McCann & Co., and the remainder belongs to the plaintiff, and she is entitled to a verdict for it. And if the jury take this view of the evidence, then they have to allow the defendants only such advances, expenses or other just claims as they have proved. If the jury take that view, you will allow the defendants what would represent their advances and just claims against McCann & Co., up to the time of Jerome Smith's death, and no longer." * * *

The verdict was for the plaintiff for $3700.

The defendants took a writ of error.

They assigned for error :

1, 2, 3. The admission of plaintiff's offers of evidence which were objected to.

4. Affirming plaintiff's 5th point.

5–9. Refusing to affirm the defendants' 1st, 2d, 3d, 6th and 10th points.

10. The answer to defendants' 9th point.

11. The portion of the charge above quoted.

*J. B. Gest* and *G. W. Thorn*, for plaintiffs in error.—The deposition of Peey neither proved nor tended to prove any material fact in issue; the evidence offered must correspond with the allegations and be confined to the point in issue. This rule excludes all evidence of collateral facts. Such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them: Greenl. Ev. §§ 51, 52; Weidler *v.* The Farmers' Bank of Lancaster, 11 S. & R. 134. Neither the death of Jerome Smith, nor the time of his decease, was put in issue by the pleadings. The general issue admits the character in which the plaintiff sues as set out in the declaration :

[Cunningham v. Smith's Administrator.]

Carpenter and Rose, overseers, v. Whitman, 15 Johns. 208; Kennebec Purchase v. Call, 1 Mass. Rep. 483; State Treas. v. Wiggins, 1 McCord 568; Truax v. Truax, 1 Pennington 166; Floyd v. Breckenbridge, 4 Bibb 14; Henderson's Admr., Id.  391; Thomas v. Tanner, 6 Monroe 52; Chaplain v. Tilley, 3 Day 303. There was no plea in abatement or other plea putting in issue the right of the plaintiff to sue as administratrix: Conard v. Atlantic Ins. Company, 1 Pet. U. S. Sup. Ct. 386; and therefore the death of intestate was admitted.  The assignment vested the right to receive the money in the assignee: Angell on F. & L. Ins., ch. xvi., sect. 326, p. 361; Harrison v. McConkey, 1 Johns. Ch. R. 34; Palmer v. Merrill, 2 Cush. R. 282; Fortesque v. Barnett, 3 M. & K. 36.

It is not necessary that the assignee should have any interest; he stands on the rights of the party who effected the insurance: Ashley v. Ashley, 3 Simons 149; Barber v. Morris, 2 Mood. & Rob. 62.  A man may insure his life and present the policy as a gift to a friend: Ins. Co. v. Robertshaw, 2 Casey 191; Elliott's Appeal, 14 Wright 80.   The defendants having paid the premium on the policy, they were entitled to the benefit of the same: Bruce v. Gardon, Law Rep. 8 Equity 429; 15 Id. 32; Godsal v. Webb, 2 Keene Ch. R. 99.

A voluntary assignment by a person of a policy of insurance on his own life is good as against his executors and administrators: Elliott's Appeal, 14 Wright 80; Ashley v. Ashley, 2 Simons' R. 149; Valton v. The Nat. Ins. Society, 22 Barb. 9.

A scintilla of evidence or a mere surmise that the contract was other than the writing showed, would not justify the judge in leaving the case to the jury: Railroad v. Hummell, 8 Wright 377; Cotton v. Wood, 98 Eng. Com. L. Rep. 568; Howard Express Co. v. Wile, 14 P. F. Smith 201; Elliott v. Ins. Co., 16 Id. 22.

The defendants had an insurable interest on the life of Smith by reason of their contract with McCann & Co., and were interested in their future profits: Valton v. Nat. F. L. Asso. Soc., 19 Barb. 9; Morrell v. Trenton Ins. Co., 10 Cushing 282; Miller v. Eagle L. Ins. Co., 2 E. D. Smith 268.

The sum to be received is not limited by the amount of interest: Runyon on Life Ins. 23, 4; Dalby v. London Life Ins. Co., 15 C. B. 365; Law v. London I. L. P. Co., 19 Jurist 178.

G. Junkin, for defendant in error.

The opinion of the court was delivered, February 8th 1872, by
SHARSWOOD, J.—We are of opinion that the evidence offered by the plaintiff below and received by the court under exceptions by the defendants, which forms the subject of the first three specifications of error, was irrelevant and inadmissible.  More than

that, it was calculated to distract and divert the attention of the jury from the only true point in issue, which was, whether the assignment of the policy on the life of Jerome Smith by the Connecticut Mutual Life Insurance Company, No. 88,435, to the defendants was absolute or as collateral security for advances by the defendants. That this was the true and only question which arose upon the evidence, is abundantly clear, and indeed is not disputed. The only ground upon which it has been attempted to sustain the admission of the evidence is that it proved the fact of the death of the insured. It is said that this fact was essential to the plaintiff's recovery, and that although it was an admitted fact, the plaintiff was not bound to accept the admission, but could insist on proving it, and if the evidence of it gave her any collateral advantage with the jury she was entitled to the benefit of it. This may be true in general, but it is not true when the fact in question is conclusively admitted by the pleading, as was the case here. The action was by the plaintiff as the administratrix of Jerome Smith. There was no plea in abatement denying the death of Jerome Smith, and setting up the consequent invalidity of the letters of administration. The letters are not only in all cases primâ facie evidence of the death of the person on whose estate they are granted, but when there is no plea to them and consequently no issue made upon the grant, they are conclusive evidence of the fact of death : 1 Greenl. on Ev. § 550 ; Newman *v.* Jenkins, 10 Pick. 515 ; McKimm *v.* Riddle, 2 Dall. 100 ; Ayers *v.* Musselman, 2 P. A. Browne 115.

The next six specifications of error, which are to the answers of the court below to the points of the plaintiff and defendants, may all be resolved into one question, whether there was any sufficient evidence to submit to the jury upon which they could find that the assignment of the policy No. 88,435 was as a collateral security for present or future indebtedness by the assignor to the assignees. The defendants may have had such an interest in the life insured under the contract of September 1st 1868 as would have entitled them to insure his life in their own names. That, however, might have been a question. But Jerome Smith's interest in his own life was unquestionable, and if he was willing to insure himself with their money and then assign the policy to them, there is no principle of law which can prevent such a transaction. Indeed this is not controverted. Now, not only was the assignment in question on the face of it simple and absolute, but it was specially expressed so to be under the hand and seal of Jerome Smith himself. "I hereby assign, transfer and set over absolutely," is its language. Mr. Tilden, the agent of the insurance company, by whom the assignment was drawn and witnessed, testified, "Jerome Smith said it was to be an absolute and unconditional assignment." Two other witnesses testify to other de-

clarations by him of the same import, at or about the same time. Mr. Morgan said : " There was then a further conversation about a policy to be taken out for the benefit of the firm, and as to whether there would be any difficulty in their taking out a policy which would secure them the amount of it in case of his death, whether they had any interest or not. Mr. Smith said they could take out a policy for whatever amount they liked if they would pay the premium." And again : " It was understood that this policy had nothing to do with their advances to Mr. Smith or to the business in Mexico. I heard Mr. Cunningham say this to Mr. Smith." Winthrop R. Cunningham in his deposition said : " W. T. Cunningham said distinctly to Jerome Smith that he wanted it clearly understood that in any insurance that he effected for the firm, that if he died, we made the insurance, if he didn't, we lost the premium. I remember these words ; Jerome Smith fully assented to this." And again : " It was clearly understood and agreed upon between Mr. Smith and W. Cunningham & Sons that it was to be solely for the benefit of W. Cunningham & Sons free from any claim of any kind." The testimony of these witnesses was in support of what appeared on the face of the writing. On the other hand, what is set up to impeach the writing thus sustained ? First, the testimony of the plaintiff to a declaration by one of the defendants after the death of Smith, that they had taken out the policy to secure them against losses, and, second, the testimony of Henry K. Smith, a son of the plaintiff, that he had overheard the same conversation, and that Mr. Cunningham said " that they had lost the policy that they expected would cover all the expenses ;" and again : " that the one taken out to secure them was lost." It may be that there was a time when this would have been considered a *scintilla* of evidence, sufficient to justify the submission of the case to the jury, but that doctrine is now exploded : Howard Express Company v. Wile, 14 P. F. Smith 201. It was evidently insufficient to authorize the jury to draw the inference that the assignment was other than absolute, and the question ought not therefore to have been submitted to them. It was a mere loose declaration, in the course of a casual conversation, unaccompanied with any admission of liability, at a time when the declarant supposed that the policy had been lost for want of the payment of the premium in proper time. It could not fairly be intended to mean, that the insurance was designed to secure the defendants for advances ; but simply to secure them against losses and expenses generally in that business in which they had engaged with Jerome Smith, and on account of which they had insured or wished to insure his life. Under such a contract as they had made with Mr. Smith, they might well look forward to the contingency of losses and expenses other than those which would result from the failure of

[Cunningham *v.* Smith's Administrator.]

Smith to refund advances made to him.   They contemplated consignments of merchandise to him for sale in Mexico or to the firm of McCann & Co., of which he was to be a member, and such consignments instead of resulting in profits, might end in losses and expenses which the defendants would have to bear.   Upon this, which is the most reasonable interpretation of the language, there was nothing to contradict the absolute character of the assignment.

As to the 10th assignment, the learned judge was certainly right that in point of law it was not material whether the premium on the policy was paid before or after the death of the insured.   If so, it was an error to submit the question to the jury.

It is unnecessary to consider the 11th assignment.   No doubt, upon the basis that the policy was assigned to the defendants as a mere collateral security for advances made to or debts owing by Jerome Smith, or the firm of which he was a member, the answer of the learned judge was entirely correct.

Judgment reversed, and *venire facias de novo* awarded.