## CITY OF AMARILLO v. RUST.
### No. 4080.

Court of Civil Appeals of Texas. Amarillo.

Nov. 1, 1933.

Rehearing Denied Nov. 15, 1933.

E. A. Simpson and Underwood, Johnson, Dooley & Huff, all of Amarillo, for appellant.

Clayton & Bralley and Works & Bassett, all of Amarillo, for appellee.

HALL, Chief Justice.

This is the second appeal of this case. Upon the first appeal the judgment was reversed and the cause remanded, and the opinion appears in (Tex. Civ. App.) 45 S.W.(2d) 285. Since the first appeal the pleadings have been amended, but on page 288 of 45 S.W.(2d), there appears a plot showing the location of the ditch where the accident occurred with reference to South Houston street and East Fifteenth avenue, which by reference is made a part of this opinion.

The appellee was awarded $3,000 by the last judgment. The case this time was tried upon the plaintiff's second amended original petition. The substance of this pleading is that East Fifteenth street was within the corporate limits of the city of Amarillo and had been used by the public as such for many years prior to the date of the accident. That South Houston street intersected East Fifteenth street, but by reason of the ditch which ran diagonally across it, said street ended just south of its intersection with said East Fifteenth street and about one hundred feet south of the south line of said intersection. That the ditch had been excavated by the defendant and was twenty feet wide and approximately twelve feet deep, with no bridge or passageway over it. That the intersection of said streets had the appearance of a street crossing extending south of East Fifteenth street so that an observant traveler going south at night on Houston street, unfamiliar with the location of the ditch, would be unable to ascertain that South Houston street ended at or near its intersection with East Fifteenth street. That about September 26, 1930, Geraldine Rust, approximately twelve years of age, was riding in an automobile at night when it was impossible to see that Houston street continued no further than the ditch. That the automobile in which she was riding was being driven by her older brother, who was also unfamiliar with said streets, when he drove into the ditch. That the said automobile was being driven at a lawful rate of speed and in a careful and prudent manner, traveling in a southerly direction on South Houston street. That the defendant, with actual and constructive notice that Houston street ended a few feet north of said ditch, grossly and negligently failed to maintain a suitable fence, barrier, or other warning at said place. That the said Geraldine Rust and her brother, without fault on their part, fell into said ditch, throwing Geraldine with great force through the windshield of the automobile and against the side of the ditch, with the result that her chin, nose, and both lips were severely cut, bruised, and lacerated, her neck was twisted and wrenched, her head bumped and her shoulders and breasts were bruised and jarred, her back was sprained, and her upper and lower lips lacerated, scarred, and disfigured. That these injuries will continue to cause her physical pain and suffering in the future. Her scarred, marred, and mutilated features will result in her having to carry such disfigurement and blemishes upon her face throughout her natural life, all of which injuries are permanent and will cause her to suffer great mental pain, anguish, and humiliation, and will cause her to be greatly humiliated and embarrassed by reason of the scars, blemishes, and disfigurements upon her face, and will continue to cause her to suffer great mental pain and anguish throughout her natural life and to be humiliated and embarrassed in the company of others. That as a result of the injuries she had to be placed in a hospital under the care of physicians and suffered great nervous shock, all of which injuries and damages were the direct and proximate results of the negligence of the defendant city. She summarizes the elements of negligence in her petition as follows:

"1. That the city was negligent in excavating or allowing to be excavated such ditch contiguous and adjacent to South Houston Street and East 15th and the intersection thereof.

"2. That the city was negligent in grading or causing to be graded the south end of South Houston Street and the intersec-

tion of same with East 15th Street up to within a few feet of the ditch in question.

"3. That the city was negligent in failing to place and maintain proper and suitable and sufficient fences, barriers, or other warning signals between the intersection of South Houston Street with East 15th Street and the ditch in question.

"4. That the city was negligent in excavating or permitting such ditch or excavation to be so made adjacent to and so near the intersection of South Houston Street with East 15th Street without having suitable and sufficient warning signs giving notice to the public of the ending of South Houston Street.

"5. That the city was negligent in excavating or permitting such ditch to be excavated so adjacent to and near the intersection of said South Houston Street and East 15th Street without maintaining suitable and sufficient barriers or other danger signals as to said ditch.

"6. That the city was negligent in excavating or allowing to be excavated such open ditch contiguous with and adjacent to the intersection of the said streets without erecting and maintaining suitable and sufficient barriers under the circumstances to prevent automobiles and similar vehicles from going into the ditch when being driven along said streets at night."

—and charges that all of said acts constituted negligence on the part of the city and were the proximate cause of her injuries.

The defendant answered by general demurrer and several special exceptions, some of which will be hereinafter discussed. The answer further consists of a general denial and the allegations that plaintiff's injuries were the result of an accident. That for many years prior to the date of the accident, South Houston street was closed south of where it entered or intersected with East Fifteenth street and was closed to all travel by the erection of a barricade on the south side of East Fifteenth street and across what would have been the extension of South Houston street. That South Houston street was never graded south of Fifteenth avenue and to the ditch in question and was not graded for several blocks south of the ditch and that the territory lying south of Fifteenth street showed to be a closed street and one abandoned as such. That from its intersection with Fifteenth avenue northward, South Houston street was graded and that the travel south on South Houston street when reaching Fifteenth avenue would turn to the right or left on Fifteenth street, going east or west on said street. That from the south line of Fifteenth street opposite the point where South Houston street intersected said Fifteenth street to the ditch in question was sod land and open prairie country and no street had been graded through it, and that when plaintiff and her brother drove south across Fifteenth street, they drove at least one hundred and twenty feet where there was no roadway and across prairie before they reached the ditch. That she and her brother were upon a joint enterprise and failed to use any degree of care for their own safety. That long prior to the time of the accident, the defendant had caused to be placed, erected, and maintained in the center of what would have been Houston street had it been extended across Fifteenth avenue, and at a point some one hundred and twenty feet north of the ditch in question, a barricade or barrier consisting of cedar posts set in the ground along the south side of Fifteenth street and squarely across what would have been Houston street had it been extended southward across Fifteenth street. That these posts had planks nailed across them, constituting a barrier which was up at the time of plaintiff's injury and was sufficient to give warning of the fact that the roadway ended at Fifteenth.

Defendant pleads in the alternative that if the barrier was not up at the very time the plaintiff was injured, then that it had been so recently torn down that the defendant had no notice of that fact and its servants, agents, and employees had no notice that it was torn down or had been torn down by some person unknown to defendant. That it had been so recently torn down that defendant could not have received notice of its condition in time to have repaired it. That defendant, its servants, employees, and street foreman knew that the barrier was in place and intact up to within twenty-four hours of the date of the injury, if it be true that it was not intact and in place at the very time of the injury.

Defendant further set up that plaintiff was guilty of contributory negligence in the following particulars:

"(a) The plaintiff herself failed to keep an ordinarily careful and proper lookout along the roadway in front of her.

"(b) The plaintiff herself was guilty of contributory negligence in failing to keep a proper lookout ahead and in failing to discover the ditch in question in time to warn her brother to stop the car.

"(c) The plaintiff herself was guilty of contributory negligence in riding in a car which was at the time possessed of defective brakes.

"(d) That the plaintiff herself was guilty of contributory negligence in driving in a car without lights.

"(e) That plaintiff was guilty of contributory negligence in being driven over an admittedly strange road at a high reckless and dangerous rate of speed.

"(f) That the plaintiff herself was guilty of contributory negligence in riding in a car after dark at a rate of speed greater than permitted by law, to-wit: more than twenty miles per hour."

In response to special issues, the jury found as follows:

(1a) That the defendant allowed the ditch to remain open at the point where the injuries occurred on the night of September 26, 1930.

(1b) This constituted negligence,

(1c) Which was the proximate cause of plaintiff's injuries.

(2a) That the defendant had graded the ground between Fifteenth street and the ditch in such a manner as to cause it to appear to a person in the exercise of ordinary care, traveling at night, as an extension of Houston street south of Fifteenth street to the ditch.

(2b) That in making said grade, the city was guilty of negligence.

(2c) Which was a proximate cause of plaintiff's injury.

(3a) The defendant placed a barrier between the intersection of Fifteenth street and Houston street and the place where the automobile went into the ditch.

(3b) That the barrier was not reasonably sufficient prior to the breaking down thereof to give notice or warning to a person in the exercise of ordinary care, driving south on Houston street at night in an automobile, of the existence of the ditch.

(3c) That the failure to place a sufficient barrier at that point was negligence,

(3d) Which was a proximate cause of plaintiff's injuries.

(4a) That shortly before the accident, there was no barrier north of the place where the automobile went into the ditch which was reasonably sufficient to give warning to a person exercising ordinary care while driving south on Houston street at night.

(4b) The barrier had been torn down prior to the time plaintiff and her brother passed the place where it had stood.

(4c) That neither the defendant nor its superintendent of streets or employees engaged in maintaining the streets knew that the barrier had been torn down.

(4d) That neither the superintendent nor employees engaged in maintaining the streets would have known by the exercise of ordinary care that such barrier was down.

(4e) That sufficient time had elapsed from the time the barrier was torn down for the defendant's superintendent and employees to have learned by the exercise of ordinary care that the barrier was down.

(5a) That immediately prior to the accident Geraldine Rust did not fail to keep a reasonable and careful lookout in front of the automobile.

(5b) That such failure was not negligence on her part.

(6a) That the automobile at that time was not being driven without lights.

(6b) That it was not negligence to be riding in an automobile without lights.

(7) That the negligence of Geraldine did not concur with the negligence of the defendant as a proximate cause of her injuries.

(8) That the injuries sustained by Geraldine were not the result of an accident.

In response to the ninth, the jury was asked to fix the amount of damages, if any; $3,000 was finally agreed upon.

 The first three propositions urged by appellant relate to misconduct of the jury. In the first two it is insisted that during their deliberations and prior to an agreement upon the amount of the verdict, the jurors discussed at great length the fact that the plaintiff would have to pay her attorneys and from the amount recovered by her she must pay her hospital bills and the expense of repairing the automobile.

Upon the issue of misconduct presented by these assignments, two of the jurors, Neely and Hare, were called to testify.

The testimony of Neely shows that they voted upon special issue No. 9 determining first whether plaintiff was entitled to recover and second as to the amount. That according to these votes they ranged from nothing to $10,000. This was on Saturday morning, January 28th. That they decided to answer special Issue No. 9 first and did not arrive at an answer to that issue until the following Monday morning about noon. Neely said that originally he was not in favor of giving plaintiff anything. That he later agreed that she was entitled to $1,500. That prior to an agreement as to plaintiff's right to recover and the amount to be given her, there was considerable discussion by various members of the jury, during which it was said that the attorneys would probably get half of the amount awarded her. That they all took that fact into consideration, together with hospital bills and doctors' bills she would have to pay and the damages to the car. This witness said that at the time he voted for $1,500 the jurors had just said that there would be hardly anything left for the plaintiff after everything was paid out; that it had been two years since the time of the accident; that there would hardly be anything left for her. That although the court had charged them not to discuss any fact or circumstance not in evidence, that these matters were not disregarded in finally making up their verdict and that they had some effect on every juror. He stated positively that he took such matters into consideration

finally and that he had to do so before he could see his way clear to vote yes on the $3,000. That notwithstanding some members of the jury cautioned the others not to consider attorneys' fees and expenses, nevertheless they did go ahead and discuss them.

The juror Hare said that at first the jury ranged from two who were not in favor of awarding any damages at all to $68,000, and that he was one who opposed awarding any damages, and that they stood ten to two all day Saturday. That there was quite a bit of discussion of the matter of attorneys' fees. Some of the jurors said it should not be considered and others claimed that it should. That two or three of the boys knew that whatever she got, there would have to be half of it paid to the attorneys. That her doctors would charge her something, also the hospital, and that when she got through, she would not have anything left. That other jurors accused him of not wanting to give her anything, and he finally told them $1,500 was a fair verdict. That after he heard the argument about attorneys' fees, hospital and doctors' bills, he was willing to add $500 more on that account. That the discussion had weight with him, but did not have as much weight as it did with some of the others. That Jurors Gaut, Austin, Moore, Crutchfield, and Vance insisted that at such a figure there would be nothing left for the plaintiff and that they would not agree to less than $3,000. That thereafter, as a matter of co-operation, he finally agreed to the $3,000.

There is an intimation in the record that $3,000 was also a quotient verdict. However, without regard to that fact, the evidence is sufficient to sustain the contention that at least two of the jurors were induced to increase the amount of the verdict to which they agreed, materially as the result of the discussion by other jurors of attorneys' fees and other expenses. The effect of such conduct has been too often declared by the courts to require further discussion here. We think it is clear that the misconduct is sufficient ground for a reversal. Texas & P. R. Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950; St. Louis S. W. R. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, 277; Texas & N. O. R. Co. v. Parry (Tex. Com. App.) 12 S.W.(2d) 997; St. Louis S. W. R. Co. v. Smithhart (Tex. Civ. App.) 9 S.W. (2d) 146.

In Sims v. Sims (Tex. Civ. App.) 296 S. W. 612, the court holds that it is not incumbent upon a party complaining of misconduct of the jury to show beyond question that such conduct affected the judgment if upon the entire record it is reasonably doubtful whether improper conduct affected the verdict the same should be set aside and a new trial granted.

The testimony is equally clear with reference to the act of the jury in deferring a discussion and decision of the first eight issues until after they had determined what their answer should be to the ninth issue. As shown above, the first four issues inquired as to facts which would or would not establish the liability of the defendant city and bore upon the issues of negligence. Hare testified without contradiction that in considering the first eight issues, they skipped from issue No. 2 to issue No 9. That they deliberated on that about an hour. "We were trying to make up our minds as to whether we were going to give her anything or not and some of them said that made a difference as to how they answered questions two and three or a certain part of three and we did not go back to that part of three until about 4:00 o'clock Saturday afternoon. We threshed out the fact that we were going to award her something."

In Monkey Grip Rubber Co. v. Walton (Tex. Com. App.) 53 S.W.(2d) 770, 773, it is said: "It is such misconduct as will require a reversal if it be shown that a jury has agreed, in advance of answering the issues submitted, in whose favor the verdict should be, and thereafter attempts to answer the question submitted with a view of bringing about such result. Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372." To the same effect is City of Waco v. Rast (Tex. Civ. App.) 2 S.W.(2d) 563; Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941; Simmonds v. St. Louis, B. & M. R. Co. (Tex. Com. App.) 29 S.W.(2d) 989.

Appellant further complains of the action of the court in overruling defendant's exceptions to the plaintiff's second amended original petition wherein damages are claimed because of plaintiff's contemplation of her facial disfigurements and that she would be embarrassed and an object of pity in the future and would be humiliated thereby.

There was no error in the court's ruling. Plaintiff's right to recover upon the grounds alleged is discussed in 13 Tex. Jur. 224, § 121, and 226, § 123, citing Chicago, R. I. & G. R. v. Smith (Tex. Civ. App.) 197 S. W. 614, Id. (Tex. Com. App.) 222 S. W. 1099; Decatur Cotton Seed Oil Co. v. Belew (Tex. Civ. App.) 178 S. W. 607, 612; Texas Elec. Ry. v. Whitmore (Tex. Civ. App.) 222 S. W. 644; and numerous other authorities.

In special issue 1a of the court's charge, the jury was asked: "Did the defendant City of Amarillo, allow the ditch in question to remain open where the automobile in question ran into said ditch," etc. And in special issue No. 2a, the jury was asked: "Did the defendant grade the ground between Fifteenth Street and the place where

the automobile in question went into the ditch in such manner as to give said ground the appearance * * * of being an extension of Houston Street?"

R. S. art. 2189 requires the court in submitting a case upon special issues to give such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. The word "allow" is not a legal term. It is in common use and must be presumed to have been understood by the jury. While the word "grade" as used in special issue No. 2 may in some instances be a technical term, as it relates in this case to the business of constructing streets, we think no further definition or explanation was required than that given by the court when he asked the jury to find whether the defendant had graded that part of the street in such manner as to give it the appearance of being an extension of Houston street. In other words, the court asked the jury if the city had graded Houston street south of the intersection with Fifteenth street in such manner as to give it the appearance of that part of the street north of Fifteenth street. No error is shown in this particular.

■ The court submitted issue 3a as follows: "Did the defendant place a barrier or warning signal between the intersection of Fifteenth Street and Houston Street at the place where the automobile in question went into the ditch?" This was answered in the affirmative. This was followed by issue 3b, which reads: "If so, was such barrier or warning signal reasonably sufficient prior to the breaking down thereof, if it was broken down, to give notice or warning to a person in the exercise of ordinary care driving south on Houston Street at night," etc. It is insisted that this is error, because the undisputed evidence showed that this barrier was broken down not earlier than the night preceding the night upon which plaintiff was injured. This contention is without merit. Plaintiff specifically charged that the defendant had negligently failed to place a barrier at that point and the city alleged that such barrier had been constructed there for a long time prior to the day of the accident. If no barrier had ever been constructed by the city, a charge of negligence might have been predicated upon it; but since the issue was raised by the pleadings of both parties, the court did not err in submitting it.

■ The defendant charged that the plaintiff was guilty of contributory negligence in that "the car was being driven without lights * * * and as a result of the absence of lights, the car went into the ditch," and it is further charged that the brakes upon said car were broken, or at least one of them was broken, and that plaintiff was guilty of contributory negligence in driving a car with such mechanical defect. The court inquired of the jury whether the automobile in which plaintiff was riding was being driven without lights on the occasion in question. Appellant insists that the court should not have restricted the jury to a finding that both lights on the car were out, because the evidence showed that the car was being operated with only one headlight. We have found no evidence as to whether the tail-light was burning. No error is shown here. Generally in negligence cases, the issue submitted by the court should follow the language of the pleading. Speer's Law of Special Issues, § 180; Denison v. Darden Lumber Co. (Tex. Civ. App.) 21 S.W.(2d) 574; Davis v. Hill (Tex. Civ. App.) 291 S. W. 681; West Lumber Co. v. Smith (Tex. Civ. App.) 283 S. W. 1104.

The Penal Code, art. 798, requires that every motor vehicle, while on a public highway when in operation during half an hour after sunset to one-half hour before sunrise, shall carry at the front at least two lighted lamps showing white lights and at the rear a lighted lamp exhibiting one red light. A failure on the part of the driver of the car to have even one of these three lights would constitute negligence per se. The charge is that plaintiff was guilty of contributory negligence because it was being operated without any lights. In order to sustain this charge, it would be necessary to show that the car was being driven without either of the three lights. The evidence showed that only one of the headlights was burning. This does not prove the specific act of negligence alleged and the court did not err in confining the issue submitted to the particular act of negligence per se alleged. Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Civ. App.) 280 S. W. 882; Ft. Worth & D. C. R. Co. v. Jenkins (Tex. Civ. App.) 42 S.W.(2d) 267; 59 L. R. A. 221.

By the tenth proposition the appellant insists that the evidence introduced upon this trial, being much stronger than that produced upon the former trial, is sufficient to show that the plaintiff and her brother were upon a joint enterprise prior to and at the time of the accident and that the court should have so held as a matter of law.

It is true that the evidence is much stronger upon that issue and was certainly sufficient to have required the court to submit it to the jury.

■ In response to special issue No. 4d, the jury found that the defendant's superintendent of streets and its employees engaged in the maintenance of the streets would not have by the exercise of ordinary care known that the barrier which had been erected across what would have been Houston street if it had been extended south beyond Fifteenth street, had been torn down, and in

response to the next issue 4e the jury found that said superintendent and employees had sufficient time after the barrier had been torn down, if they had exercised ordinary care, to have learned that the barrier was down. These findings are conflicting and neither could form the basis of a judgment upon that issue.

The court did not err in the admission of evidence from the mother of plaintiff with reference to her embarrassment, humiliation, and her inclination to avoid strangers and friends since the accident.

It appears that a petition, signed by about thirty citizens of the city of Amarillo one year prior to the plaintiff's injury, had been presented to the city authorities, which recites, in part: "We, the undersigned citizens residing east of the Santa Fe Railway and south of Tenth Street in the Mirror Addition to the City of Amarillo, beg leave to call your attention to the drain that comes under the Santa Fe tracks at Fifteenth Street and then runs east along Fifteenth Street east of said railway until it reaches Houston Street. and then angles across the corner of Block 474, then across a portion of 475 and across Block 484 and comes out in the street at Seventeenth and Roberts. These open ditches are very dangerous, both to pedestrians and automobiles."

Upon objections made, the court held that it was admissible to show that the city had notice of the dangerous condition of the ditch. In order to avoid the introduction of the petition, appellant's counsel admitted that the city had notice that the ditch was dangerous and objected to the petition being read by appellee's counsel to the jury. The admission in open court was as follows: "Defendant will judicially admit in the presence of the jury that certain citizens of Amarillo prior to the happening of the accident, called the attention of the Mayor and Commissioners to the existence of the ditch out there and to the fact that the barricade had been broken down at this point." The appellee had no right to any further testimony upon that point, and the court erred in permitting the petition with the names of the petitioners to be read to the jury after such an admission. "The fact that evidence may be relevant and material does not necessarily require its admission, but it may in the discretion of the Court be excluded, * * * where it tends only to prove facts which are admitted." 22 C. J. 169, § 95, citing Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677. "The evidence will·be more readily excluded where its probable effect would be to prejudice and mislead the jury." Cunningham v. Smith's Adm'r, 70 Pa. 450.

The error was emphasized by reason of the fact that the petition contained the hearsay statement that the open ditches were very dangerous to both pedestrians and automobiles and by the further fact that the names of the citizens were read and subsequently one of appellee's counsel referred to it in argument, saying: "Now talk about an accident when thirty people are giving them notice that this was very dangerous to both pedestrians and automobiles. I understand that but that is the notice that their attention was called to." When considered in the light of these remarks, it may be assumed that the error was extremely prejudicial.

The objection made to Speed's testimony should not have been sustained. It was simply a general objection without stating the grounds. The general rule is that an objection to the admission or exclusion of evidence must be specific and state the grounds of the objection, and this rule obtains. unless the testimony sought to be elicited is incompetent, irrelevant, and immaterial. Stiles v. Giddens, 21 Tex. 783; Cheatham v. Riddle, 8 Tex. 162; Capitol Hotel Co. v. Rittenberry (Tex. Civ. App.) 41 S.W.(2d) 697.

In view of another trial we specially call the attention of the court and counsel to this rule as practically all of the objections made to testimony were general and should have been overruled unless the objector stated the grounds of his objection.

There are numerous complaints presented by proper bills of exception to the closing argument made by appellee's counsel, F. P. Works, by which it is shown that Mr. Works discussed matters which the court had excluded and in which other counsel of appellant assumed to tell the jury what rule of law governed the city in the maintenance of its highways and the rule as stated was incorrect. By proper bill it is shown that Mr. Works stated: "You know the wonder or wonders to my mind has been ever since I came into the case why in the name of high heaven they did not bridge that little ditch down there twenty feet wide. Talk about your taxes and appeal to your pocketbook, may I be permitted to say in answer to that argument that if it had built that bridge, they would have built up enough houses over there to have paid for that bridge forty times before now and yet they appeal to your pocketbooks as citizens of Amarillo." The court's refusal to approve the bill does not show that the statement was by way of retaliation and under the bill as framed we cannot assume that fact.

There were other arguments which we will not take the time and space to set out that may be called inflammatory and will probably not be repeated upon another trial.

Because of the errors hereinbefore discussed, the judgment is reversed and the cause remanded.